Claude H. Orndorff, Jr., Appellant, v De Nooyer Chevro-
let, Inc., Defendant, and Town of Colonie, Respondent.

Third Department, May 29, 1986

## APPEARANCES OF COUNSEL

*Hinman, Straub, Pigors & Manning, P. C. (Paul Collins* of
counsel), for appellant.

*Maynard, O'Connor & Smith (Christine K. Krackeler* of
counsel), for respondent.

## OPINION OF THE COURT

Kane, J.

As a result of an accident in November of 1977 on Central
Avenue in the Town of Colonie, Albany County, plaintiff left
his car, a 1970 Chevrolet Corvette, for repairs at the auto body
shop of defendant De Nooyer Chevrolet, Inc. (De Nooyer). This
commenced a chain of events which evolved into a consumer's
nightmare.

Plaintiff, together with his insurance company, negotiated
with De Nooyer and entered into a contract with it for the
repair of the vehicle. At the time of this contract, De Nooyer

agreed to repair all of the damage caused by plaintiff's accident, including any hidden damage. The price for these repairs was fixed at $2,850. In addition, plaintiff agreed with Bill Nelson, the body shop manager at De Nooyer, that additional work such as painting was to be done, but that a bill for those services would be forthcoming at a later date. Plaintiff was also assured that the work to be performed would be completed by February 1, 1978.

Plaintiff left the Albany area and subsequently experienced medical and health problems which prevented him from retrieving his car. Plaintiff returned to the Albany area in late May of 1978. In June of 1978, plaintiff and the person from whom he purchased the Corvette, Wayne Caban, went out to De Nooyer to check on the status of his car. Plaintiff proceeded to the storage area where his car was kept, only to find it literally filled with garbage. At that time, plaintiff discussed with Nelson the problems De Nooyer was having completing the repairs on his car. Plaintiff also informed Nelson that he needed his car returned because he was still paying auto insurance on it and was still renting space to store the vehicle. Nelson assured plaintiff that he could get the car in early July. Needless to say, plaintiff's car was not ready at that time. Similar promises went unfulfilled.

The critical events which form the basis for the instant action occurred in May of 1979. Because of the frustration caused by De Nooyer's failure to complete the repairs on plaintiff's car in a timely manner, coupled with the fact that many of plaintiff's phone calls to De Nooyer resulted in disconnection, plaintiff went out to De Nooyer on May 9, 1979. At that time, plaintiff's car was not ready and Nelson was not available for plaintiff to talk with him. Plaintiff later that day called Nelson and, "out of exasperation", asked Nelson what plaintiff had to do to get his car back. Nelson allegedly replied in a flippant manner, "Do whatever you like."

Around lunchtime on Friday, May 11, 1979, plaintiff returned to De Nooyer in order to discuss the situation further with Nelson. When plaintiff arrived at De Nooyer, he could not locate Nelson and noted a conspicuous absence of any De Nooyer employees. After waiting a number of minutes in the auto body shop area without the return of any De Nooyer personnel, plaintiff ventured out to the back storage lot to ascertain whether his car was still on the premises. At this point in time, plaintiff decided to start up his car and drive it to another service station for repairs. Plaintiff dropped the car

off at a Sunoco station, went back to his office and allegedly attempted to contact Nelson to inform him of his actions, but was unable to reach him. Plaintiff picked the car up later that evening from the Sunoco station, drove it to his home and left it in his garage over the weekend.

Nelson returned to work that afternoon and noticed that plaintiff's car was no longer parked in the rear storage lot. Assuming that it had been transferred to the service area for repairs, he did nothing about it. However, on Monday, May 14, 1979, when the car was still not returned, Nelson checked with the service department, which had no knowledge of its whereabouts. A thorough search of all of De Nooyer's storage lots failed to disclose its presence on their property. As a result, Nelson contacted the police department of defendant Town of Colonie (the Town) which responded to De Nooyer on Tuesday, May 15, 1979. At that time, Nelson executed a stolen car report. As a postscript to that report, Nelson had affixed the following: "Car may be in possession of owner; owner possibly took car and did not pay $4000 bill." As a result of this stolen car report, the Town executed a "File 1", which is a confirmed stolen vehicle report, and which is then transmitted over the police teletype in order to advise other police agencies that the described vehicle is stolen.

On Tuesday, May 15, 1979, at about 10:00 P.M., plaintiff took the Corvette out for a ride in order to mail some letters and charge the car's battery. At approximately 12:56 A.M. on Wednesday, May 16, 1979, plaintiff was stopped by a City of Schenectady (the City) police car on Albany Street in the City. That stop was occasioned by the sighting of plaintiff's vehicle which met the description of a stolen car in the File 1. The police officers at the scene asked plaintiff for his license and registration, ascertained that he was the owner of the car and detained him in order to determine if the File 1 was still "active". The officers radioed headquarters, found that the File 1 was still active and had originated in the Town, and informed plaintiff that the Town's police officers were responding. The officers from the Town arrived at approximately 1:15 A.M. and the City officers left the scene.

At this point, the participants' versions of this incident vary. Plaintiff claims that he was detained by the police officers, was not free to leave and was required to follow them to the Town's police station. The arresting officers, however, merely asserted that they asked plaintiff to follow them and that he agreed to do so. However, when further pressed on

this "voluntariness" issue, the officers admitted that plaintiff was not in fact free to move about of his own volition. Upon his arrival at the Town's police station, plaintiff was given his *Miranda* warnings, was arrested and signed a voluntary statement about the incident. In that statement, which the arresting officer contended in large part formed the basis for the arrest of plaintiff, plaintiff asserted: "I had no intention in *not* paying the bill. I only wanted my car back" (emphasis supplied). After his arrest, plaintiff was subsequently fingerprinted and had mug shots taken. Plaintiff was then handcuffed to another suspect and transported to Town Justice Philip S. Caponera's house for arraignment. Plaintiff was then transferred to the Albany County Jail where he was subjected to a full body search. He was then held overnight in the county jail. Plaintiff was ultimately released about 1:00 P.M. later that day, May 16, 1979.

An information/complaint was lodged against plaintiff by the arresting officers. That information charged plaintiff with grand larceny in the second degree in violation of Penal Law § 155.35, to wit, the theft of a "debt" having a value in excess of $2,600.[1] However, this charge was subsequently dismissed by County Court.

The instant action was commenced by plaintiff against De Nooyer, the Town and the City.[2] The complaint asserted causes of action for property damage, false arrest and malicious prosecution. The answers of De Nooyer and the Town asserted cross claims against each other. A jury trial ensued. Prior to plaintiff resting his direct case, plaintiff and De Nooyer entered into a stipulation of settlement as between them. The Town promptly moved for a mistrial, which motion was denied by the trial court.

The jury returned a verdict in favor of plaintiff finding, as damages, $50,000 for the false arrest (apportioned equally between De Nooyer and the Town) and $25,000 for malicious prosecution (apportioned 25% to the Town and 75% to De Nooyer). As a result of the settlement with De Nooyer, plaintiff received a judgment against the Town for $31,250. These cross appeals ensued.

We affirm. A review of the record supports the jury's

1. It should be noted that such an action cannot constitute larceny *(see, People v Gasbara,* 95 AD2d 333, 334).

2. The complaint against the City was dismissed.

conclusion that no probable causes for plaintiff's arrest existed. Indeed, the record reveals that all the elements of the torts of false arrest and malicious prosecution were established by plaintiff's proof (see, Broughton v State of New York, 37 NY2d 451, 456-457, cert denied sub nom. Schanbarger v Kellogg, 423 US 929).

Next, we find that the trial court correctly denied the Town's request to inspect the entire file of plaintiff's counsel. We also reject the Town's argument that the court abused its discretion by denying the Town's motion for a mistrial based upon the settlement between De Nooyer and plaintiff (see, Ruhl v Smith, 37 AD2d 1033). It should be noted that the trial court gave prompt and proper cautionary instructions. Finally, we decline the Town's invitation to set aside the verdict as excessive. Here, plaintiff was shown to be an individual with no prior criminal record, a Major in the Air Force Reserves and a respected employee of a large corporation. As a result of defendants' actions, plaintiff was arrested, handcuffed, fingerprinted, photographed, forced to undergo a strip search and held in custody at the Albany County Jail. In addition, plaintiff was subjected to ridicule and embarrassment due to the publication in a local newspaper of his prosecution for stealing a car. The damages award should therefore not be disturbed (see, James v Shanley, 73 AD2d 752).

Turning to plaintiff's cross appeal, we find that the jury's apportionment of liability was not contrary to the weight of the evidence. Contrary to his argument on appeal, plaintiff's attorney himself conceded that De Nooyer: "took an active role in the criminal proceedings against [plaintiff] in Colonie Court. * * * It's part of my theory that the Colonie Court and the Colonie Police Department were nothing more than a collection agency on behalf of De Nooyer in this particular instance." Further, plaintiff consented to an instruction to the jury on apportionment of liability and did not object or except after the charge was given to the jury.

Accordingly, the judgment should be affirmed in all respects.

Mahoney, P. J., Casey, Weiss and Levine, JJ., concur.

Judgment affirmed, without costs.