Joseph M. MENDOZA, Plaintiff,

v.

The CITY OF ROME, NEW YORK; James Boyer, Donald Early, and Terry Gowett, as Police Officers of the City of Rome Police Department; and Other Unknown Police Officers of the City of Rome, Defendants.

No. 92–CV–436.

United States District Court, N.D. New York.

Dec. 21, 1994.

Office of Kenneth P. Ray, Utica, NY (Charles W. Wason, John Maya, of counsel), for plaintiff.

Office of Corp. Counsel, Rome, NY (Diane M. Martin, Gregory Amoroso, of counsel), for defendants.

*MEMORANDUM DECISION AND ORDER*

HURD, United States Magistrate Judge.

## I. *Introduction.*

The above entitled action was tried in Utica, New York, between September 6, and September 12, 1994. At the conclusion of the plaintiff's case, the complaint was dismissed as a matter of law as against the defendants James Boyer ("Boyer") and Terry Gowett ("Gowett"). The deliberate indifference to medical needs and illegal search claims against all defendants were also dismissed. The federal claims against the defendant Donald Early ("Early") for false arrest and use of excessive force, and the claim against the defendant City of Rome, for a pattern, policy, or practice, of failing to supervise and train its officers were submitted to the jury. The pendent state law claims for false arrest and assault against both remaining defendants were also submitted.

The jury returned a verdict in favor of the plaintiff on all claims. The jury awarded compensatory damages to the plaintiff in the sum of $200,000.00. The jury also returned a verdict against Early on punitive damages, and awarded plaintiff the sum of $17,543.00. On September 13, 1994, judgment was entered in favor of the plaintiff against both defendants jointly and severally in the sum of $200,000.00 in compensatory damages, and an additional sum of $17,543.00 against Early in punitive damages.

## A. Motions.

The defendants have moved for an order pursuant to Rule 50(b) setting aside the verdicts and the judgment entered thereon, and directing that judgment be entered in favor of the defendants as a matter of law. Fed. R.Civ.P. 50(b). In the alternative, defendants also moved for an order pursuant to Rule 59(b), granting defendants a new trial on the grounds that the jury's verdict was against the weight of the evidence.

In addition, defendants moved for a remittitur on the grounds that the compensatory damages awarded by the jury were excessive. Early did not move with regard to the amount of punitive damages.[1] However, he did move to dismiss the punitive damages verdict against him on the grounds that he was not named in his individual capacity as a defendant in the caption of the action or in the complaint, but only in his official capacity as a police officer. Plaintiff opposed all of the above motions, and renewed his motion to amend the pleadings to conform to the proof pursuant to Rule 15(b). Oral argument was held on October 13, 1994. The court reserved decision.

Thereafter, the defendants made an additional motion. This motion was pursuant to Rule 60(b)(2), (3), and (6), to set aside the verdict and the judgment entered therein, and granting defendants a new trial on the grounds of newly discovered evidence, a fraud committed upon the court, and in the interest of justice. Plaintiff also opposed this motion. The matter was submitted to the court on November 10, 1994, without oral argument. This decision will address all motions.

## B. Trial.

Viewing the evidence in the light most favorable to the plaintiff as the court must in such motions, *McGuigan v. CAE Link Corp.*, 851 F.Supp. 511, 513 (N.D.N.Y.1994) (citing *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993)), the following are the trial facts.

During the evening of Friday, April 29, 1991, plaintiff Joseph Mendoza (age 20 at the time), went to his friend Kevin Williamson's ("Williamson") home at 311 Ridge Street in Rome, New York. A short time later, there was a phone call to the home saying that Williamson was involved in a fight at Hooters, a bar on South George Street, located a few blocks from the Williamson home. The plaintiff left with a group of young men (including two of Williamson's brothers) and walked to Hooters. Upon arriving at Hooters, they observed Williamson in a fight in the middle of South George Street. Plaintiff assisted in breaking up the fight and started to walk away when Williamson got into another fight with another individual. After an unsuccessful attempt to break up the second fight, the plaintiff and the group walked back to 311 Ridge Street and he told Williamson's mother what had happened.

Meanwhile, members of the Rome Police Department responded to a report of an attempted larceny and assault at Hooters. After interviewing eyewitnesses at Hooters and learning that Williamson may have been involved in the larceny and fight, Early, Boyer, Gowett, and Sgt. Thomas Tharrett ("Sgt. Tharrett") were dispatched to 311 Ridge Street. They also learned at Hooters that the other suspects were six white teenage youths. Williamson was apprehended and placed in Early's patrol car. At this point, the plaintiff was at 311 Ridge Street and observed Williamson in the back of the patrol

---

1. Plaintiff in opposition requested an additur to the punitive damages, but because he did not file a formal motion, it will not be addressed. *See Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1331 (2d Cir.1990) (citing *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935) for the proposition that additur is impermissible in federal courts).

car. Plaintiff walked out on the porch with Williamson's mother. He then went out to the sidewalk to inquire why Williamson was in the police vehicle. At that point, plaintiff was briefly questioned and placed under arrest, apparently for assault and larceny [2] by Early, a Rome Police Department patrolman, who turned him around and slammed him up against the driver's side of the patrol car, striking his right knee on the rear wheel well. Early then slammed him a second time, again striking his right knee. Early applied handcuffs to the plaintiff with his hands behind his back, and pushed him into the back seat of the police vehicle. This caused the plaintiff to strike his head on the top of the door opening. At this point plaintiff was seated in the back seat of the patrol car on the driver's side, next to Williamson. Rome Police Officer Boyer, who was seated on the front passenger side, read plaintiff his *Miranda* rights. Plaintiff complained that the handcuffs were too tight and Early laughed.

After about ten minutes, Early, with Boyer in the vehicle, drove plaintiff and Williamson to Hooters. They stopped for about ten to fifteen minutes. A group of people came around the car and identified Williamson as one of the participants in the fight. They also identified a John Clark as a participant, who was in custody in another patrol car. According to the witnesses, plaintiff was not involved in the altercation at Hooters. Thereafter, plaintiff and Williamson were driven to the police station. During the ride, plaintiff complained that the handcuffs were too tight and his knee hurt. Early took plaintiff out of the police vehicle and pushed him into the police station, despite the fact that plaintiff said his right knee was aching and he couldn't keep up. He was taken into a room and one handcuff was removed and attached to a chair. Plaintiff remained at the police station for between one and two hours. Finally his mother came and he was released with no charges ever being placed against him.

Plaintiff's mother took him directly from the police station to the Rome Hospital where he remained for over an hour. At the hospital emergency room, the swelling on his right knee was checked and he had x-rays, but he received no treatment with regard to bruises on his forehead. The above events occurred on Friday night into early Saturday morning. On Monday his regular physician, Dr. Peter A. Freedman in Utica, examined plaintiff but provided no treatment. The following week plaintiff went to Boston for further reconstructive surgery on his right knee, which had been scheduled for some period of time prior to these incidents.

The physical injuries that plaintiff sustained included a bruise to his right knee which caused swelling, red marks on his wrists, headaches which required aspirin or other pain killer for a couple of days, and some bruises and marks on his forehead. His wrists and hands were numb for a couple of days. None of the injuries were of a permanent nature. He did not incur any medical expenses or loss of earnings because of these injuries. The previously scheduled reconstructive surgery noted above proceeded as planned, and the disability he presently has because of the condition of his right knee is not related to the fact that he was slammed against the patrol car by Early on the night in question.

## II. *Discussion.*

### A. *Rule 50(b)—Judgment As a Matter of Law.*

The court may grant a motion for judgment as a matter of law on an issue where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50. "The standard for granting a motion for judgment n.o.v. pursuant to 50(b) is whether 'the evidence viewed in the light most favorable to the nonmovants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor.'" *Jund v. Town of Hempstead,* 941 F.2d 1271, 1290 (2d Cir.1991) (citations omitted); *Samuels v. Air*

---

**2.** Actually, both Early and Sgt. Tharrett were vague even at trial as to the exact reason for plaintiff's arrest.

*Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993) (judgment n.o.v. standard applies to what the federal rules now refer to as judgment as a matter of law); *McGuigan,* 851 F.Supp. at 513; *Jones v. Lederle Lab.,* 785 F.Supp. 1123, 1125 (E.D.N.Y.1992), *aff'd,* 982 F.2d 63 (2d Cir.1992). "[J]udgment n.o.v. is reserved for those rare occasions when there is 'such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result o[f] sheer surmise and conjecture, or the evidence must be so overwhelming that reasonable and fair minded persons could only have reached the opposite result.'" *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 871 (2d Cir.1992) (citations omitted).

Stated another way, judgment as a matter of law is proper only if there is "such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Samuels,* 992 F.2d at 14. A motion for judgment as a matter of law "should be denied unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Id.* (quoting *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir. 1970)).

### 1. *Defendant Early.*

Early seeks judgment as a matter of law on the false arrest claims[3] based upon his probable cause to arrest the plaintiff, and the fellow officer rule.[4] Early does not seek judgment as a matter of law with regard to the verdict against him on the state law assault claim. Although Early's notice of motion lists the excessive force claim, he

failed to address this issue in his supporting memorandum or oral argument. The jury clearly accepted the evidence at trial that Early used force in slamming plaintiff against the patrol car twice, and in pushing plaintiff into the car causing him to strike his head.

█ A police officer is empowered to use only such force as is reasonably necessary to make an arrest. N.Y. Penal Law § 35.30(1) (McKinney 1987). An arresting officer who uses excessive force will be liable for assault and battery. *See Jones v. State,* 33 N.Y.2d 275, 280, 352 N.Y.S.2d 169, 307 N.E.2d 236 (1973). Thus, the issues of excessiveness of force and assault were strictly questions of fact which the jury resolved against Early based upon legally sufficient evidence, and any motion on these claims is denied. *See* Fed.R.Civ.P. 50.

█ The first issue with regard to the false arrest claims is whether there was "such a complete absence of evidence supporting" the jury's finding that Early did not have probable cause to arrest the plaintiff, that the finding "could only have been the result of sheer surmise and conjecture," or there was "such an overwhelming amount of evidence in favor of [Early] that reasonable and fair minded" jurors could only have found that he had probable cause to arrest. *See Samuels,* 992 F.2d at 14. There was conflicting evidence as to the circumstances confronting Early at the time of the arrest. He must have had probable cause not only to believe a crime had been committed, but also that the individual in question, in this case the plaintiff, had committed that crime. *See Brinegar v. United States,* 338 U.S. 160, 175– 76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *Carroll v. United States,* 267 U.S. 132, 161–62, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Collom v. Incorporated Village of*

---

**3.** The court refers to both state and federal claims, and false imprisonment and false arrest claims, collectively as "false arrest."

**4.** Except for a few conclusory statements, Early has never moved pursuant to Rule 50(a) or 50(b), or briefed the issue of whether he was entitled to judgment as a matter of law on the ground of qualified immunity. Also, no objection was made when qualified immunity as an issue of fact was not charged or submitted to the jury. The

court, therefore, finds it unnecessary to address qualified immunity. *See* Fed.R.Civ.P. 7(b) (specifying requirements for motions); 50 (motion for judgment as a matter of law must specify the law and facts upon which movant is entitled to judgment); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 896 n. 5, 110 S.Ct. 3177, 3192 n. 5, 111 L.Ed.2d 695 (1990) (footnote in reply memorandum insufficient to constitute "motion").

*Freeport, New York,* 691 F.Supp. 637, 640 (E.D.N.Y.1988).

Viewing the evidence in a light most favorable to the plaintiff and granting him every reasonable inference that the jury might draw in his favor, sufficient evidence was presented to create an issue of fact for the jury as to probable cause. *See Samuels,* 992 F.2d at 16. Further, reasonable persons could have concluded from the evidence that probable cause did not exist. *See id.* at 14. The evidence demonstrates that the only description Early had of the alleged perpetrators was that they were white males in their teens. That description could, of course, account for any number of individuals in the City of Rome. Neither Early nor Sgt. Tharrett, his superior officer, was able to give any further description of the alleged perpetrators of the petit larceny and assault. None of the reports filed at the time of the arrest gave any further details or description. This evidence provides a legally sufficient basis for a reasonable jury to conclude that Early himself did not have probable cause to arrest the plaintiff. *See* Fed.R.Civ.P. 50.

 The second issue as to the false arrest claims is the fellow officer rule. Under that rule, arresting officers may rely upon information or direction from another officer because the directing officer is presumed to possess probable cause. *People v. Rosario,* 78 N.Y.2d 583, 588, 578 N.Y.S.2d 454, 585 N.E.2d 766 (1991), *cert. denied,* 502 U.S. 1109, 112 S.Ct. 1210, 117 L.Ed.2d 448 (1992); *see also Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965). "[A]n officer is deemed to act with probable cause when making an arrest at the direction of another law enforcement officer who has the requisite probable cause." *Rosario,* 78 N.Y.2d at 588, 578 N.Y.S.2d 454, 585 N.E.2d 766. If the warrantless arrest is challenged, however, the presumption of probable cause disappears and the government has the burden "to establish that the officer or agency imparting the information *in fact* possessed the probable cause to act." *Id.* (citations omitted) (emphasis added). Furthermore, where the directing officer

does not have probable cause, the arrest is unlawful regardless of the good faith of the arresting officer. *People v. Jennings,* 54 N.Y.2d 518, 523, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (1981); *see also Whiteley,* 401 U.S. at 568, 91 S.Ct. at 1037; *Rosario,* 78 N.Y.2d at 589, 578 N.Y.S.2d 454, 585 N.E.2d 766; *cf. Raysor v. Port Auth.,* 768 F.2d 34, 38 (2d Cir.1985) (finding that the lower court properly found probable cause lacking where officer made arrest without good faith belief that the order directing the arrest was lawful), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986).

Although Early testified that he had his own probable cause for making the arrest, defendants argue that he was entitled to rely solely upon the directions of his superior officer, Sgt. Tharrett, to make the arrest. Conflicting evidence regarding the circumstances of the arrest was presented. Under the version of the facts given by the plaintiff and his witnesses, the arrest was made by Early without any directions being given by Sgt. Tharrett. In fact, according to the plaintiff, Sgt. Tharrett was not even present at the time of the arrest. Although this version of the events was contradicted by the defendants, the jury accepted the plaintiff's version of the circumstances surrounding the arrest.

In addition, viewing the evidence in the light most favorable to the plaintiff, Sgt. Tharrett had no more probable cause to arrest the plaintiff than did Early. If Sgt. Tharrett ordered Early to make the arrest of plaintiff, it was based upon general descriptions of the perpetrators involving events of alleged petit larceny and assault given to him by witnesses. He had no more specific or additional information or description to link the plaintiff to any crime than did Early, and the jury quite properly rejected the claim that either officer had probable cause to arrest the plaintiff. Merely to state in a conclusory fashion *after the fact,* that the plaintiff matched the description given by bystanders is not sufficient. *See People v. Brnja,* 50 N.Y.2d 366, 373 n. 4, 429 N.Y.S.2d 173, 406 N.E.2d 1066 (1980) (cannot rely upon fellow officer rule where no indication

that information possessed by directing officer was transmitted to arresting officer).

Although the issue is whether or not Early had probable cause to arrest the plaintiff at the time of the arrest, subsequent events clearly demonstrated that he had made a mistake, that the plaintiff had committed no crime, and that in fact, no eye witnesses at the scene ever described or identified plaintiff as having done so. Vague descriptions of white teenagers can not justify the arrest and manhandling of someone who just happened to be in the vicinity of the home of an admitted perpetrator of a crime. Therefore, Early's motion for judgment as a matter of law pursuant to Rule 50(b) must be denied.

### 2. *Defendant City of Rome.*

■ The defendant City of Rome has moved to dismiss that portion of the verdict awarded to plaintiff based upon federal claims that the City's pattern, policies, or practices of failing to properly supervise and train its police officers, resulted in the violation of plaintiff's constitutional rights.

"Congress intended municipalities and other local government entities to be included among those persons to whom § 1983 applies." *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). Yet, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

> Therefore ... a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

"[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins,* 503 U.S. at 120, 112 S.Ct. at 1066.

■ "Our first inquiry [then] ... is the question of whether there is direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385, 109 S.Ct. at 1203. Therefore, the liability of the City of Rome and its police department must be predicated on a causal link between the alleged pattern, policy, or practice of . failing to train and supervise, and a constitutional violation. While no direct evidence has been presented of a written policy existing in the City of Rome police department, such evidence is not required. "A municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials.... However, a policy or custom may only be inferred if the acts or omissions of a municipality's supervisory officials are serious enough to amount to 'deliberate indifference' to the constitutional rights of a plaintiff." *Poulsen v. City of North Tonawanda,* 811 F.Supp. 884, 896 (W.D.N.Y.1993) (citing *Villante v. Department of Corrections,* 786 F.2d 516, 519 (2d Cir.1986)); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) ("The inference that such a policy existed may arise from 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' *Ricciuti v. New York City Transit Authority,* 941 F.2d [119, 123 (2d Cir.1991) ].") Furthermore:

> [T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.

*Dwares,* 985 F.2d at 100.

Plaintiff relied upon three elements in order to establish municipal liability. First,

plaintiff presented the testimony of one Francis Kervan and a portion of a study conducted by the New York State Division of Criminal Justice Services which reviewed the command structure of the Rome Police Department. Plaintiff next offered some twenty-five Notices of Claims which were received by the City of Rome pertaining to alleged acts of misconduct by members of the Rome Police Department; and finally, plaintiff relied upon the testimony of City of Rome Chief of Police, Merino Ciccone.

In the Kervan report, admitted into evidence as plaintiff's Exhibit 7, Kervan recommended that the command structure of the Rome Police Department be altered to eliminate the positions of the Deputy Chief and a Captain. He testified that the present command structure might lead to the isolation of the Chief of Police from the rest of the Department. Kervan recommended that the Department adopt a formal, written, use of force report. However, he also testified that the Department's Manual contained a policy for the use of force that was identical to the requirements of Article 35 of the New York State Penal Law. (Compare Exhibit 4 with N.Y. Penal Law § 35.00 et seq. (McKinney 1987)). In addition, the report made no recommendations regarding either the training of police officers in the use of force, or the policies of arrest or supervision. Although the above recommendations were not implemented, plaintiff submitted no expert testimony which concluded that such failure was in any manner a cause of the false arrest and use of excessive force upon the plaintiff in this instance.

The plaintiff introduced into evidence twenty-five Notices of Claims filed with the City of Rome for alleged acts of its police department pursuant to *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). *See* Exhibits 9A–9Y. The Second Circuit in *Fiacco* stated:

[E]vidence that a number of claims of police brutality had been made by other persons against the City, *together with evidence as to the City's treatment of these claims,* was relevant. . . . The City's knowledge of these allegations *and the nature and extent of its efforts to investigate* and record the claims were pertinent to Fiacco's contention that the City had a policy of nonsupervision of its policemen that reflected a deliberate indifference to their use of excessive force.

*Id.* at 328 (emphasis added). The Second Circuit did not find the notices of claims standing alone sufficient to override the potential prejudice to the defendant. Rather, it was the combination of the notices and evidence of the City's attitudes and responses to such notices that tipped the scales toward the probative.

■ This Court gave limiting instructions both at the time the Notices of Claims were admitted and during the jury charge. However, after the admission of the Notices of Claims, the plaintiff failed to introduce any evidence concerning the efforts to evaluate these claims by the City. There was no evidence concerning the treatment of any of these claims, nor was there any evidence as to the investigations conducted by the police department. Even in *Fiacco,* the purpose of such evidence was for the plaintiff to demonstrate the City's efforts in the face of such problems. "[I]f the City's efforts to evaluate claims were so superficial as to suggest that it's official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims." *Id.* at 328. As noted above, the plaintiff offered no proof in this regard,[5] and the mere fact that claims had been filed against the City of Rome, standing alone, does not establish a pattern, policy, or practice which was causally related to the false arrest and use of excessive force upon the plaintiff.[6]

---

**5.** Because the defendants did not move to strike the Notices of Claim after the plaintiff failed to connect same with any policy or practice, the documents were submitted to the jury and undoubtedly influenced them in their verdict against the City of Rome.

**6.** The District Court for the Eastern District of New York articulated the holding in *Fiacco* stating, "the Court of Appeals held that [defendant City's] policy was sufficiently proved by evidence of (1) a substantial number of complaints of police brutality, although unadjudicated, made to the City during the five years prior to the inci-

Finally, the plaintiff relies on Chief Ciccone's testimony that he was unaware of any police officer being disciplined for engaging in excessive force or false arrest. In the first place, Chief Ciccone had only been in that position for one year, and the disciplining of police officers was not his responsibility either before or during the time of the incident with the plaintiff. In addition, because the plaintiff failed to explore the details concerning the twenty-five Notices of Claims filed against the City, the jury was presented with no evidence of any acts by Rome police officers which reasonably could or should have required discipline. Again, the mere fact that Notices of Claims were filed does not constitute evidence of violation of Constitutional rights. *See Skorupski,* 652 F.Supp. at 694; *supra* note 6. There was no evidence in Chief Ciccone's testimony from which one could draw any reasonable inference that there existed in the City of Rome a pattern, policy, or practice of failing to train or supervise which was causally related to the acts committed by Early against the plaintiff on April 29, 1991.

In summary, as a matter of law, the plaintiff has failed to prove that the City of Rome, either by pattern, policy, or practice, failed to train or supervise, and therefore deprived the plaintiff of any constitutional right. There was no evidence showing a causal connection between what happened to the plaintiff and any acts on the part of the municipality. Therefore, the federal claims against the City of Rome must be dismissed as a matter of law.

The City of Rome remains liable under respondeat superior for the verdicts against Early for false arrest and assault under state law. *Raysor,* 768 F.2d at 38; *Johnson v. Town of Colonie,* 102 A.D.2d 925, 926, 477 N.Y.S.2d 513 (3d Dep't 1984) (Although respondeat superior did not apply to the § 1983 claims, "[p]laintiff's common-law causes of action may proceed on a theory of respondeat superior.")

## B. *Rule 59(b)—New Trial.*

A motion for a new trial may be joined with a motion for judgment as a matter of law, or may be sought in the alternative. Fed.R.Civ.P. 59(b). "A less stringent standard applies to a motion for a new trial" than to a motion for judgment as a matter of law. *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987). A motion for a new trial should be granted only when the court " 'is convinced that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice.' " *Sorlucco,* 971 F.2d at 875 (quoting *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 370 (2d Cir.1988)) (additional citations omitted); *Katara,* 835 F.2d at 970.

For the same reasons set forth above, the jury's verdict on liability was supported by a fair interpretation of the evidence regarding the false arrest, false imprisonment, use of excessive force, and assault claims. However, defendants further contend they are entitled to a new trial because the court failed to charge the jury on the fellow officer rule as set forth in the Supreme Court case of *Whiteley v. Warden,* 401 U.S. at 568, 91 S.Ct. at 1037.

The defendants never specifically requested that the court make the fellow officer charge, but in fact stated, "I would like to request that the court provide instructions to the jury that probable cause for an arrest may exist based upon the knowledge and direction of another officer or supervisory officer." (Tr. at 470–471.) Subsequent thereto, the jury submitted a question to the court which stated, "Does an order from a patrolman's superior constitute probable and reasonable cause to make an arrest?" (*Id.* at 479.) In reply thereto, the court responded:

> [A]nyone who makes an arrest must have probable cause to believe that a crime has been committed, and that the defendant or

dent therein; (2) the testimony of several of the complainants; (3) failure of the City to implement investigative procedures, to conduct any investigation other than to have a supervisory officer talk to the officer involved, or to take any action against any officer; and (4) the lack of any specific guidelines for the use of force or rules for police discipline." *Skorupski v. County of Suffolk,* 652 F.Supp. 690, 694 (E.D.N.Y.1987). As mentioned above, plaintiff has fallen short of fulfilling all four of these elements.

the person who is arrested has committed that crime.

In this case, the defendant, Donald Early, at the time he made the arrest must have had probable cause to believe that ... a crime had been committed, and that the plaintiff had committed that crime. And the crimes we are discussing are attempted petit larceny and assault.

Now, the directions of a superior, and statements given to Officer Early by his superior are factors to be considered by him, and by you in determining whether or not he had probable cause to make an arrest of the plaintiff.

However, Officer Early was the one that made the arrest, and he is responsible for the arrest. Therefore, he must make his own independent judgment as to whether or not he has probable cause to believe that the defendant, in this case the plaintiff, Mr. Mendoza, committed the crime of either petit larceny, attempted petit larceny, or assault.

You can take the statements given to him by his superior officer into consideration, and you can use that as a factor in determining whether or not Officer Early had probable cause.

However, in other words, merely because he is directed by a superior officer does not insulate Officer Early from the responsibility for making the arrest. He made the arrest. If necessary, if he does not have probable cause as a result of his discussions with his superior, he must inquire further of his superior as to the basis for the superior's directions, and for the basis upon which his superior is directing him to make the arrest. I will now repeat that if you find the defendant, Officer Early, has proved by a fair preponderance of the evidence that he had probable cause to believe that the plaintiff committed the crimes of attempted petit larceny and assault, you will find that there was no false arrest. However, if you find that the defendant Donald Early failed to prove by a fair preponderance of the evidence that he had—that he had probable cause to believe that plaintiff had committed the crimes of attempted petit larceny and assault, then

there was a false arrest and your finding will be for the plaintiff.

*Id.* at 479–481. The defense made no objections or requests with respect to this supplemental charge given to the jury.

■ The court is satisfied that the above charge adequately covers the fellow officer rule and properly submitted the issue to the jury. The fact that an officer made an arrest at the order of a superior does not relieve him of liability for the arrest. *See Whiteley,* 401 U.S. at 568, 91 S.Ct. at 1037; *O'Malley v. New York City Transit Auth.,* 829 F.Supp. 50, 54 (E.D.N.Y.1993); *Rosario,* 78 N.Y.2d at 589, 578 N.Y.S.2d 454, 585 N.E.2d 766; *Jennings,* 54 N.Y.2d at 523, 446 N.Y.S.2d 229, 430 N.E.2d 1282. The court therefore denies the motion to the extent it seeks relief on those issues of liability under Rule 59(b).

■ The evidence presented of plaintiff's damages is as follows. The plaintiff sustained a bruise and swelling of his right knee, a bruise to his forehead, red marks to his wrists, numbness of the hands, and headaches. None of these injuries were permanent. Treatment consisted of x-rays and ace bandages the night of the arrest, and a follow-up visit by his attending physician. The plaintiff has had extensive problems with his right knee since age four. He had three reconstructive surgeries performed prior to the incident of April 29, 1991. He was scheduled for further reconstructive surgery six days following his arrest. The reconstructive surgery was performed as scheduled, and the banging of plaintiff's knee on the patrol car had no effect whatsoever on his future course of treatment. There was no permanency, medical expense, or any loss of earnings as a result of the injury to his right knee. All the physical injuries dissipated within a few weeks after the assault.

In addition, the plaintiff, of course, suffered shame and humiliation as a result of being arrested, placed in a patrol car, taken to Hooters and exhibited before eye witnesses while handcuffed in the back of a police vehicle, transported to the police station, handcuffed in a room and held there for over an hour. In addition, he was embarrassed to be released in the custody of his

mother at the police station. Although plaintiff had previous encounters with law enforcement, this encounter obviously had some traumatic effect on him.

The jury awarded plaintiff the sum of $200,000 in compensatory damages. Defendants challenge the award as excessive and unsupported by the evidence adduced at trial.

A judgment must be set aside or reduced "where the damages awarded are so excessive as to shock the judicial conscience." *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1058 (2d Cir.1990) (citations omitted). "To determine whether an award of damages is shockingly excessive when the law of a particular state is applied, we must examine and compare the challenged award with awards made in similar cases in the courts of that state." *Id.* A court should look at that state's awards because "[j]ury verdicts and judicial opinions approving or disapproving them, when considered over a period of time, provide 'some indication of the consensus of opinion of jurors and courts as to the proper relation between the character of the injury and the amount of compensation to be awarded.'" *Martell v. Boardwalk Enter., Inc.,* 748 F.2d 740, 750 (2d Cir.1984) (quoting *Senko v. Fonda,* 53 A.D.2d 638, 639, 384 N.Y.S.2d 849, 851–52 (2d Dep't 1976). These cases are used as a point of reference by which to gauge the appropriateness of the award. *Matthews v. CTI Containers Transp. Int'l Inc.,* 871 F.2d 270, 278 (2d Cir.1989); *Raucci,* 902 F.2d at 1058; *Fuentes v. Consolidated Rail Corp.,* 789 F.Supp. 638, 645 (S.D.N.Y.), *aff'd,* 978 F.2d 706 (2d Cir.1992).

The following cases typify the opinion of jurors and courts in New York regarding injuries similar in character to that which plaintiff herein suffered and the amount of an appropriate compensatory award. Adjustments must be made for time and inflation since many of these cases occurred some years ago. It was necessary to go back in time to find appropriate examples involving somewhat similar fact situations.

Where booking and arraignment took four hours, and plaintiff was held for four days prior to release on bail, a $15,000 award for false arrest was excessive. *Dabbs v. State,* 59 N.Y.2d 213, 464 N.Y.S.2d 428, 451 N.E.2d 186 (1983) (remanding for recalculation of damages using correct standard—only time detained prior to arraignment should be considered in false arrest damages; post-arraignment detainer falls under malicious prosecution). Where police officer put his finger under plaintiff's nose, pushed plaintiff backwards, twisted her hand behind her back, then arrested her, transported her to the station in a paddywagon, and detained her overnight, a jury awarded $15,000 for false arrest. *Martin v. Albany,* 42 N.Y.2d 13, 15–16, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977). This award was reduced to $5,000. *Id.* at 16. In *Murray v. Long Island R.R.,* 28 N.Y.2d 849, 322 N.Y.S.2d 248, 271 N.E.2d 227 (1971), the Court of Appeals of New York affirmed the reduction of compensatory damages to $65,000 for assault and compensatory and punitive damages to $10,000 for false arrest. In *Murray,* a police officer struck plaintiff with his fist and nightstick rendering plaintiff unconscious and plaintiff required hospitalization. *Id.* at 849, 322 N.Y.S.2d 248, 271 N.E.2d 227.

In *Malte v. New York,* 125 A.D.2d 958, 510 N.Y.S.2d 353 (4th Dep't 1986), *appeal denied,* 69 N.Y.2d 607, 514 N.Y.S.2d 1024, 507 N.E.2d 320 (1987), the plaintiff school teacher was falsely arrested in front of his students and peers. The teacher was strip searched, incarcerated for ten hours, and was represented by the arresting officer as a child beater during a television interview. The court reduced a $125,000 verdict for false arrest to $35,000. *Id.* A $50,000 award for false arrest was affirmed where the plaintiff was handcuffed, strip searched, fingerprinted, photographed, held in custody for twelve hours and ridiculed in the newspaper. *Orndorff v. De Nooyer Chevrolet, Inc.,* 117 A.D.2d 365, 503 N.Y.S.2d 444 (3d Dep't 1986).

Where plaintiff was handcuffed, transported to the station, and arraigned three hours later, a jury award of $25,000 was excessive. *Hallenbeck v. City of Albany,* 99 A.D.2d 639, 472 N.Y.S.2d 187 (3d Dep't 1984). Finding no substantial physical or mental abuse resulted from the false arrest, the court reduced the award to $10,000. *Id.* In *Levine v. Abergel,* 127 A.D.2d 822, 512 N.Y.S.2d 218

(2d Dep't 1987), a plaintiff suffered bruises on his face, arm, and back, and had sleepless nights until the bruises healed. *Id.* at 824. The court found a jury award of $25,000 was excessive since plaintiff suffered minimal pain and anguish. *Id.* The court ordered a new trial on the issue of damages. *Id.*

In *Palmquist v. City of Albany,* 112 A.D.2d 624, 625, 492 N.Y.S.2d 487 (3d Dep't 1985), the plaintiff suffered a fracture to the anterior nasomaxillary spine; a fracture to the anterior portion of cartilaginous septum; obstruction to the left nares from a deviated septum, which was permanent and required corrective surgery; swollen eyes; nose bleeding; recurrent headaches; and nightmares. Plaintiff was spread eagle, searched in public, incarcerated for three hours without medical treatment, fingerprinted, and photographed. *Id.* The *Palmquist* Court affirmed a jury verdict of $18,500 on false arrest and assault claims. *Id.*

On claims for false arrest and malicious prosecution, a jury verdict of $75,000 was reduced to $15,000 where the plaintiff was held for two hours before release. *Burroughs v. New York City Transit Auth.,* 112 A.D.2d 186, 490 N.Y.S.2d 861 (2d Dep't 1985). In *Westbrook v. George Distrib., Inc.,* 111 A.D.2d 440, 488 N.Y.S.2d 499 (3d Dep't 1985), the plaintiff received minimal physical injuries and did not prove lost wages. The court therefore held an $8,500 award to be excessive and ordered a new trial on the issue of damages. *Id.* Where a plaintiff was arrested at a public meeting, the court reduced a $35,000 compensatory damages award to $15,000. *Feldman v. Town of Bethel,* 106 A.D.2d 695, 484 N.Y.S.2d 147 (3d Dep't 1984).

The plaintiff in *O'Donnell v. K–Mart Corp.,* 100 A.D.2d 488, 474 N.Y.S.2d 344 (4th Dep't 1984), was a mentally retarded 23–year old. Employees of the store punched plaintiff in the mouth, causing blood to run down his face, handcuffed him, and detained him until police arrived. *Id.* Plaintiff was crying and hysterical. *Id.* Although plaintiff suffered no permanent physical injury, the damage award of $35,000 was upheld due to the mental suffering of the plaintiff, especially because of his handicap. *Id.* In *Kelly v. Kane,* 98 A.D.2d 861, 470 N.Y.S.2d 816 (3d

Dep't 1983), police grabbed plaintiff's arm, wrestled him to the ground and got on top of him, handcuffed him in a hurtful manner, shoved him into a patrol car, and transported him to the station where he was booked and fingerprinted. Plaintiff was released on bond 1¼ hours later, and was then treated at a hospital for bruises. *Id.* Compensatory awards of $10,000 for assault and battery, $5,000 for false arrest, and $5,000 for malicious prosecution were affirmed. *Id.* In *Woodard v. City of Albany,* 81 A.D.2d 947, 439 N.Y.S.2d 701 (3d Dep't 1981), the court reduced a $16,000 verdict for false arrest to $7,500, where the plaintiff spent five hours in jail but had no physical or mental injuries.

In contrast, a jury award of a similar amount as that awarded to plaintiff herein resulted from serious, permanent injuries. In *Hygh v. Jacobs,* 961 F.2d 359 (2d Cir. 1992), the Second Circuit affirmed an award of $216,000 for excessive use of force. *Id.* at 366. The arresting officer struck plaintiff causing injuries to his face, handcuffed him and transported him to the station, fingerprinted and photographed him, then took plaintiff to the hospital for treatment. *Id.* at 361. The plaintiff in *Hygh* suffered fractured cheekbones which required plastic surgery under general anesthesia. *Id.* at 361. Further, the plaintiff suffered nerve damage resulting in the left side of his face being permanently numb. *Id.* at 361, 366.

In *Gardner v. Federated Dep't Stores, Inc.,* 907 F.2d 1348 (2d Cir.1990), the plaintiff recovered $150,000 for past pain and suffering and $50,000 for the detention. *Id.* at 1353. There a store employee punched plaintiff in the ear several times, requiring treatment at the hospital with ear drops. *Id.* at 1350. Plaintiff was detained for eight hours, fingerprinted, photographed, and held in a cell with other prisoners. *Id.* Plaintiff's wrist was cut by the handcuffs, and his face was bruised. *Id.* Plaintiff had frequent lockjaw, difficulty chewing, occasional ear inflammation, nightmares, depression, and paranoia. *Id.* at 1351. Plaintiff suffered from a tender jaw muscle, temporomandibular joint syndrome, atypical anxiety disorder, and personality change; however, testimony

was inconclusive as to whether these were permanent. *Id.*

Based upon a review of past decisions and the evidence demonstrating the rather limited personal injuries and mental anguish that the plaintiff suffered, the court finds not only that this "award is so high as to shock the judicial conscience and constitutes a denial of justice," *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir.1990), but it is against a clear weight of the evidence. A new trial must be ordered on this issue. *Raucci,* 902 F.2d at 1058. The issue of remittitur will be addressed *infra.*

## C. *Rule 60(b)—Relief From Judgment or Order.*

"[T]he court may relieve a party ... from a final judgment ... for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ... or (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). Motions for relief from judgment brought pursuant to Rule 60(b) are "addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell ex rel. Viacom, Inc. v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990) (citing *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986)), *aff'd,* 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). Relief under Rule 60(b)(6) should be granted only "where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." *Matarese v. LaFevre,* 801 F.2d 98, 106 (2d Cir.1986) (citations omitted), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987); *Nemaizer,* 793 F.2d at 63. Moreover, in considering a Rule 60(b) motion the court must serve the ends of justice, while not lightly reopening final judgments. *See Nemaizer,* 793 F.2d at 61; *United States v. Cirami,* 563 F.2d 26, 33 (2d Cir.1977).

The basis for defendants' Rule 60(b) motion is a series of affidavits secured by members of the Rome Police Department from various persons a few days after the judgment. The defendants contend that the documents demonstrate that Williamson committed perjury at the trial. A brief review of these affidavits is in order.

First is an affidavit from one Jennifer L. LaVine taken by Rome Police Detective J.C. Keys on September 15, 1994. (*See* Def.'s Not.Mot.Ex. A.) Miss LaVine is seventeen years of age. She is Williamson's girlfriend. Williamson told her that the plaintiff was going to let him borrow $2,000 from anything he received as a result of the trial. The remainder of her statement contains no information indicating in any manner that Williamson lied at the time of trial.

The second affidavit is from one Ann M. LaVine, 37 years of age, taken by Detective Keys on the 17th day of September 1994. She is the mother of Jennifer LaVine. She stated that her daughter made the following statement, "Kevin had said that if he didn't get a piece of Joey's award money, he was going to go to the police and tell them that he lied in court." (*Id.* at Ex. B.) Jennifer was then asked if she was saying that Kevin said that he lied, and she (Jennifer) replied, "Yes, he said he had lied." (*Id.*) This is, of course, pure hearsay since Ann LaVine has no direct knowledge of what Kevin may or may not have said, and Jennifer LaVine's affidavit denies any such statement.

The third affidavit is from one Jamie L. Vaughn, age 18, taken by Rome Patrolman, F.G. Robenski on the 15th day of September 1994. Jamie stated that she heard Kevin Williamson say to Jennifer LaVine, "I'm gonna go try to find Joe and try to get some money. If he don't give me no money, I'm gonna go tell the Judge I lied." (*Id.* at Ex. C.) This is not hearsay, but neither is it an admission by Williamson that he in fact lied at the time of trial. Rather, if true, it appears to be an extortion threat by Williamson against the plaintiff.

The fourth affidavit is from one Colt G. Foley, age fifteen, taken by Detective Keys on the 3rd day of October 1994. He states that Kevin Williamson said to Jennifer LaVine, "I should get at least $1,000 out of it ..., and if I don't...." (*Id.* at Ex. D.) Again, although not hearsay, this does not in

any manner indicate that Williamson lied at the time of trial.

Finally, there is the investigative report of Patrolman Robenski dated September 14, 1994, detailing his efforts to secure the above affidavits. Again, this report contains no information that Williamson actually lied at the time of trial, but merely that he was expecting or hoping that the plaintiff would share some of the award with him.

In the first place, the testimony of Williamson was not vital to the plaintiff receiving a verdict, and upon retrial without Williamson's testimony the same result probably would have been reached. Williamson's credibility was strenuously attacked by the defense, and in this court's opinion, he did not make a particularly good witness. The jury could have completely disregarded all of Williamson's testimony and still returned a verdict in favor of the plaintiff. In addition, the affidavits presented on this motion do not establish that Williamson testified falsely or committed perjury. At best, they reflect a rather unscrupulous and devious individual attempting to get a "piece of the action." Williamson's character, or lack thereof, was fully explored to the jury at the time of trial, and the jury was in the best position to make its evaluation.

Secondly, this was not newly discovered evidence which by due diligence could not have been discovered in time for a new trial motion under Rule 59(b). The defendants had ample opportunity to interview Williamson prior to trial to determine the nature and extent of his testimony. A new trial is not justified merely because after the fact a witness wishes to make some stupid and unwise statements. Otherwise, all jury verdicts would be vulnerable to being easily reversed. *See Nemaizer,* 793 F.2d at 61; *Cirami,* 563 F.2d at 33.

█ In order to justify granting a new trial based upon newly discovered evidence, the evidence must have been discovered after the trial, the movant must have used due diligence to discover the evidence prior to

trial, the evidence must have been relied upon at trial and not be merely cumulative or impeaching, the evidence must be material, and the evidence must be such that, if produced at trial, the outcome would have been different. *United States v. 710 Main Street,* 753 F.Supp. 121, 126 (S.D.N.Y.1990) (citations omitted); *Gemveto Jewelry Co. v. Jeff Cooper, Inc.,* 613 F.Supp. 1052, 1058 (S.D.N.Y.1985) (citing *United States v. On Lee,* 201 F.2d 722, 723 n. 3 (2d Cir.), *cert. denied,* 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364 (1953)) (additional citations omitted), *vacated on other grounds,* 800 F.2d 256 (Fed. Cir.1986). In *Gemveto Jewelry Co.,* for example, the court found that a "sustained and intensive but unsuccessful" search for the evidence in question prior to and immediately after trial met the due diligence requirement. 613 F.Supp. at 1059; *see also United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 493 (2d Cir.) (citations omitted), *cert. denied,* 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983). In *710 Main Street,* however, the court found that due diligence was not exercised when the proponent failed to describe its attempts to locate the evidence, the evidence was a public document, and investigation of responses during a deposition eight months before trial could have led to discovery of the evidence. 753 F.Supp. at 127. Defendants here merely make the conclusory statements that they were unable to make this motion until the police investigation was complete, and that the evidence was not available prior to trial.

Finally, in order to demonstrate that perjury has, in fact, been committed by a vital and material witness, and that therefore a fraud has been committed upon the court, or that judgment should be set aside in the interests of justice, the defendants must present much more than the flimsy hearsay and inconclusive affidavits submitted in support of this motion.[7] The defendants' motion for a new trial pursuant to Rule 60(b) is denied.

---

7. Plaintiff, in opposition, requested sanctions against defendants for making this motion, but because he did not file a formal motion, it will not be addressed. Fed.R.Civ.P. 11(c) (requiring

a *separate* motion for sanctions, alleging conduct with specificity, and allowing time for response and or withdrawal of the offending papers.)

### D. *Rule 15(b) and Punitive Damages.*

 Early has moved to dismiss the punitive damages verdict against him on the basis that he was not named individually in the caption of the complaint; and further, that the complaint does not allege any actions against him other than as a police officer of the City of Rome. It is clear that the caption does not name Early as an individual defendant. However, the complaint does request punitive damages in Paragraphs "40," "47," and "53," and in the addendum clause. Since Early could only be liable for punitive damages in his individual capacity, *Yorktown Medical Lab., Inc. v. Perales,* 948 F.2d 84, 89 (2d Cir.1991) (citing *Smith v. Wade,* 461 U.S. 30, 35–36 & n. 5, 103 S.Ct. 1625, 1629 n. 5, 75 L.Ed.2d 632 (1983); *Shabazz v. Coughlin,* 852 F.2d 697, 700 (2d Cir.1988)), a fair reading of the complaint would be that he has been sued individually. *See Yorktown Medical Lab., Inc.,* 948 F.2d at 88–89 (holding that individual capacity claims do not fail for lack of express pleading). However, it is not necessary to make that determination in order to resolve this issue.

Early did not assert an affirmative defense in his answer denying liability for punitive damages on the basis that he was sued only as a police officer. Prior to trial, Early did not move to dismiss the claims for punitive damages. In the pretrial submission, Early requested a charge regarding punitive damages. During the voir dire, the court advised the jury that the plaintiff was seeking punitive damages against the three individual defendants without objection. Both sides discussed punitive damages in opening statements, without objection. At the close of the plaintiff's evidence, no motion was made to dismiss the claim for punitive damages against Early.

During the Rule 51 charge conference, the court indicated that it was preparing to charge the jury on punitive damages, and there was no objection. Both sides summed up on the issue of punitive damages. The charge included a section directing the jury on its right, if it so desired, to find punitive damages in favor of the plaintiff against Early. Again, there was no objection. It was only *after* the jury returned a verdict in favor of the plaintiff against Early on punitive damages, and when the court was about to summon the jury to determine the amount, if any, of punitive damages to be awarded to the plaintiff, that *for the first time,* objection and motion was raised that the punitive damage claim should be dismissed because Early was not sued individually. At this point, the plaintiff moved to amend the pleadings to conform to the evidence pursuant to Rule 15(b). The court reserved decision on both motions, and submitted the amount of punitive damages to the jury.

 Issues tried "by express or implied consent of the parties" will be treated "as if they had been raised in the pleadings." Fed. R.Civ.P. 15(b). The court may allow amendment of the pleadings to conform to the evidence even when a motion to do so is made after judgment. *Id.; see also Yorktown Medical Lab., Inc.,* 948 F.2d at 89 ("look to the totality of the complaint as well as the course of proceedings to determine whether the defendants were provided with sufficient notice" of individual claim).

Assuming *arguendo* that the issue of punitive damages was not raised by the pleadings, it was certainly tried with the express or implied consent of the parties. Although it is also clear that any claim for punitive damages must be raised in the pleadings, *see* Fed.R.Civ.P. 8(a) (pleading must include "a demand for judgment for the relief the pleader seeks"), and such claims will be dismissed upon failure to do so, *see United States v. Stanley,* 483 U.S. 669, 692 n. 7, 107 S.Ct. 3054, 3069 n. 7, 97 L.Ed.2d 550 (1987) (Brennan, J., concurring in part and dissenting in part), in this case, Early has waived any objection after being placed on notice that the plaintiff was seeking punitive damages by failing to raise any such objection until after receipt of the jury verdict against him in the liability phase of the trial. *See* Fed.R.Civ.P. 51 (cannot assign as error the giving of an instruction unless objected to prior to the jury retiring to deliberate); *cf. City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 255–57, 101 S.Ct. 2748, 2753–54, 69 L.Ed.2d 616 (1981) (considering merits of punitive damage award against a municipality although no objection to the jury instruction

because a novel question of law was presented). The defendant consented to that issue being tried. The plaintiff's motion to amend the pleadings to conform to the evidence in accordance with Rule 15(b) is granted. Early's motion to set aside the verdict for punitive damages is denied.

### E. Remittitur.

Remittitur " 'is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial.' " *Earl v. Bouchard Transp. Co.,* 917 F.2d 1320, 1328 (2d Cir.1990) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir.1984)). "A remittitur, in effect, is a statement by the court that it is shocked by the jury's award of damages." *Ismail,* 899 F.2d at 186. In considering a remittitur motion, the standard of review "is whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978). This court has decided that issue, *see supra* p. 1122. The only issue is to determine the amount of the remittitur.

There are three alternate methods of computation. *Earl,* 917 F.2d at 1328; *Shu–Tao Lin,* 742 F.2d at 49–50. First, the court could " 'reduce the verdict to the lowest amount that could reasonably be found by the jury.' " *Earl,* 917 F.2d at 1328 (quoting 6A Moore's Federal Practice 59, 193). This is the most intrusive method to affect the jury award. *Id.* Second, the court may reduce the verdict only to the maximum that would be upheld by the trial court, if not excessive. *Id.* This is the least intrusive method. *Id.* Third, the court could reduce the verdict "to what the trial court believes a 'properly functioning jury, acting free of suggestions by counsel, would have awarded.' " *Id.* at 1329 (quoting *Uris v. Gurney's Inn Corp.,* 405 F.Supp. 744, 747 (E.D.N.Y.1975)). This is called an intermediate standard. *Id.*

In the *Earl* decision, the Second Circuit directed that "district courts should use the least intrusive standard for calculating a remittitur. According to that standard, a District Court should remit the jury's award only to the *maximum* amount that would be upheld by the District Court as not exces-

sive." *Id.* at 1330 (emphasis added). Based upon a review of prior decisions and the evidence adduced at trial, the court finds that the maximum amount for compensatory damages for the physical and mental injuries suffered by the plaintiff as a result of the false arrest, excessive use of force and assault which would have been upheld as not excessive is $62,500.00. This does not mean that a new trial with new evidence and a new jury could not make a higher or lower sustainable award. The court orders that the plaintiff accept a remittitur of the compensatory damage award in the amount of $137,500.00 or a new trial is granted on that issue alone. *Petramale v. Local No. 17 of Laborers' Int'l Union,* 847 F.2d 1009 (2d Cir.1988).

### III. Conclusion.

Therefore, it is

ORDERED that

1. Defendant Early's motion pursuant to Rule 50(b) for judgment as a matter of law is DENIED;

2. Defendant City of Rome's motion pursuant to Rule 50(b) for judgment as a matter of law is

a. GRANTED with respect to the federal law claims;

b. DENIED with respect to the state law claims;

3. Defendant Early's motion pursuant to Rule 59(b) for a new trial with respect to issues of liability is DENIED;

4. Defendant City of Rome's motion pursuant to Rule 59(b) for a new trial with respect to issues of liability in the state law claims is DENIED;

5. Defendants' motion pursuant to Rule 60(b)(2), (3), & (6) to set aside the verdict and judgment entered therein and to grant a new trial is DENIED;

6. Plaintiff's motion to amend the pleadings pursuant to Rule 15(b) is GRANTED;

7. Defendant Early's motion to set aside the verdict and judgment entered therein for punitive damages is DENIED; and

8. Defendants' motion pursuant to Rule 59(b) for a new trial with respect to the issue

of compensatory damages is GRANTED, subject to the following:

a. In the event the plaintiff's attorney files with the Clerk an acceptance of a remittitur in the sum of $137,500.00 on or before January 4, 1995, the Clerk shall file an amended judgment for compensatory damages against the defendants Early and City of Rome jointly and severally in the sum of $62,500.00 ($200,000.00 minus $137,500); and defendants' motion for a new trial shall then be DENIED; and the remaining issues such as plaintiff's attorney's fees shall be addressed; and

b. In the event the plaintiff's attorney does not file an acceptance of the remittitur on or before January 4, 1995, the Clerk shall vacate the judgment of $200,000.00 for compensatory damages, and a new trial shall be scheduled on the issue of compensatory damages only.

IT IS SO ORDERED.