**Phillip LEWIS, Plaintiff,**

v.

**CITY OF ALBANY POLICE DE-PARTMENT and William Bonanni, Defendants.**

No. 1:04–CV–152.

United States District Court,
N.D. New York.

April 24, 2008.

4. Such award representing a judgment of $17,119.05, attorneys' fees of $5,118.00 and costs and disbursements of $350.00.

Getnick, Livingston, Atkinson, Gigliotti and Priore, LLP, Of Counsel Patrick G. Radel, Esq., Utica, NY, for Plaintiff.

Rehfuss, Liguori & Associates, P.C., John W. Liguori, Esq., Latham, NY, for Defendant City of Albany.

David Brickman, Esq., Albany, NY, for Defendant Bonanni.

## MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

### I. INTRODUCTION

A trial was held on February 25, 26, 27, 28, and March 6, 2008. The jury rendered a verdict on behalf of plaintiff, Phillip Lewis ("Lewis" or "plaintiff"), and against defendant William Bonanni ("Bonanni") finding that he used excessive physical force in arresting plaintiff on November 23, 2002, thus violating his constitutional rights. However, the jury found that Bonanni did not perform a public strip search of plaintiff as was alleged. The jury also found that Bonanni's conduct in effecting the arrest using excessive force upon Lewis violated plaintiff's right to equal protection of the law due to plaintiff's African–American race. Additionally, the jury found that the City of Albany Police Department ("the City") had a custom, policy, and practice that failed to properly train, supervise, and/or discipline Bonanni, and that failure was a proximate cause of the violations of plaintiff's constitutional rights. The jury found that the violations of plaintiff's constitutional rights was a proximate cause of compensatory or actual damages to him, and awarded him the amount of $65,000.

Further, the jury found that Lewis was entitled to an award of punitive damages against Bonanni. Upon reconvening on March 6, 2008, after hearing closing arguments of counsel for Lewis and Bonanni, the jury returned a verdict awarding plaintiff punitive damages in the amount of $200,000.

The City and Bonanni filed motions for judgment as a matter of law or in the alternative for a new trial pursuant to Fed.R.Civ.P. 50(b) and 59, respectively. Plaintiff opposed. Defendants replied. Oral argument was heard on April 18, 2008, in Utica, New York. Decision was reserved.

### II. STANDARDS

#### A. Rule 50(b) Motion for Judgment as a Matter of Law

In considering a motion for judgment as a matter of law, the evidence must be considered in the light most favorable to the non-movant, and all inferences must also be drawn in the non-movant's favor. *Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir.2005). Conflicting evidence cannot be weighed and the witnesses' credibility cannot be judged. *Id.* The judgment of the jury cannot be supplanted. *Id.* The motion may be granted only where there was "no legally sufficient evidentiary basis for a reasonable jury to find" in the non-movant's favor. Fed.R.Civ.P. 50(a); *Nimely*, 414 F.3d at 390. That is, the motion may not properly be granted unless "there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a

verdict against [the moving party].' " *Le-Blanc–Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir.1995) (alteration in original) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir.1992)).

## B. *Rule 59 Motion for a New Trial*

■ On a motion for a new trial, "the trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978). However, the mere fact that the trial judge may not agree with the jury's verdict is no reason alone to grant a new trial. *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir.1983). Grant of a new trial is warranted only where the court " 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.' " *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir.1992)(quoting *Smith v. Lightning Bolt Produc., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)).

## C. *Remittitur*

■ A jury award of damages for federal constitutional violations will be upheld unless it is "so excessive 'as to shock the judicial conscience.' " *Wheatley v. Ford*, 679 F.2d 1037, 1039 (2d Cir.1982). If the award is found to be grossly excessive, a plaintiff may be ordered "to remit excessive damages or undergo a new trial." *Id.* It is appropriate to review the awards in comparable cases in determining a motion for remittitur. *Martinez v. Port Authority of N.Y. & N.J.*, No. 01 Civ 721, 2005 WL 2143333, at *19 (S.D.N.Y. Sept. 2, 2005) (citing *Gardner v. Federated Dep't Stores, Inc.*, 907 F.2d 1348, 1353 (2d Cir.1990)), *aff'd*, 445 F.3d 158, 160 (2d Cir.2006) (per curiam). It is appropriate to consider inflation when comparing prior jury verdicts

and remittitur orders. *Id.* at *20 & n. 9 (using United States Bureau of Labor Statistics calculator found at *http://data.bls. gov/cgi-bin/cpicalc.pl* as a "crude adjustment mechanism" to upwardly adjust awards for comparison purposes), *see also Martinez*, 445 F.3d at 160 (finding no error in the district court's remittitur analysis).

■ The propriety of the amount of a punitive damages award likewise is not disturbed unless it shocks the judicial conscience. *Patterson v. Balsamico*, 440 F.3d 104, 120 (2d Cir.2006). However, the following factors must be considered in the analysis: "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Id.* (internal quotation omitted).

## III. *DISCUSSION*

Defendants make multiple arguments in support of their motions for judgment as a matter of law or in the alternative for a new trial and/or remittitur. These arguments can be categorized as challenging pre-trial rulings (admission of prior complaints and perjury charge, bifurcation, and jury selection), sufficiency of evidence (excessive force, equal protection, and municipal liability), jury instructions (oral addition to verdict form and lack of a qualified immunity charge), and amount of damages awarded, and will be addressed in this order rather than as presented by either defendant.

### A. *Admissibility of Evidence*

#### 1. *Prior Complaints*

Defendants argue that admission of prior complaints of use of excessive force against African–American suspects by Bo-

nanni constituted error sufficient to justify overturning the verdict of the jury. Pursuant to Rule 61 of the Federal Rules of Civil Procedure, an error in the admission of evidence is grounds for overturning a jury verdict only where letting the verdict stand would be inconsistent with substantial justice. Fed.R.Civ.P. 61. Where an error "does not affect the substantial rights of the parties," it must be disregarded. *Id.*

■ The prior complaints were properly admitted under Federal Rule of Evidence 404(b) with regard to Bonanni's identity, since, as he himself points out, his defense was that he did not participate in the physical arrest or use any force against plaintiff. Rather, Bonanni's contention throughout the proceeding was that he was in a vehicle down the block during Lewis's arrest. The circumstances alleged in the prior complaints are strikingly similar to those in this case—that Bonanni used excessive force upon the heads of handcuffed African–American suspects. Additionally, the prior complaints were admissible to establish Bonanni's motivation and intent with regard to the use of force against Lewis (should the jury determine, as to that he was one of the officers who used excessive force against plaintiff) because plaintiff is African–American. Therefore, the prior complaints were relevant both as to Bonanni's identity as a participant in the use of excessive force and as to his motivation and intent for using such force against an African–American. *See* Fed.R.Evid. 404(b).

■ Bonanni argues that admission of the prior complaints was prejudicial because the ultimate verdict likely was based upon unrelated events in the prior complaints and that the jury may have inferred that he was an "evil person" because of the complaints. However, if the jury credited the testimony of three police officers that Bonanni was not even involved in the physical arrest of the plaintiff, it would then have had to completely ignore their version (and Bonanni's) of the events in order to base its verdict upon the prior complaints or any inference that he was an evil person. In other words, in order for defendant's proposition to stand up, the jurors would have had to, first, believe the officer witnesses' testimony that Bonanni was not even physically present at the arrest, and, second, disregard that testimony which they believed. This is far too speculative a ground upon which to base a finding of prejudice sufficient to substantially outweigh the probative value of the prior complaints. The substantial probative value of the relevant prior complaints is not substantially outweighed by the speculative danger of unfair prejudice, particularly given the limiting instructions to the jury. *See* Fed.R.Evid. 403, 105.

■ Further, the complaints in Bonanni's personnel file were relevant with regard to Lewis's *Monell* claims against the City. Their significant probative value as to whether the City failed to take proper steps in light of Bonanni's multiple alleged violations of African–American suspects' constitutional rights was not outweighed by a danger of unfair prejudice, especially in light of the limiting instructions given. *See* Fed.R.Evid. 403, 105.

The City contends that as a general principle unsubstantiated or unfounded complaints are inadmissible against a municipality, citing *Berkovich v. Hicks,* 922 F.2d 1018, 1022–023 (2d Cir.1991). In that case the plaintiff, Berkovich, alleged civil rights violations related to his arrest, including a claim under *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The trial court denied discovery of prior civilian complaints and excluded all evidence relating

to them at trial. *Berkovich,* 922 F.2d at 1021. Assuming without deciding that it was error to deny discovery of the complaints, the appellate court found that any resulting error was harmless because the complaints, all but one of which exonerated the defendant at issue, held minimal probative value. *Id.* at 1022. The Second Circuit found no abuse of discretion in the exclusion of the history of complaints at trial. *Id.* The court noted that under its " 'inclusionary' approach" to Rule 404(b), evidence of prior wrongful acts may be admitted for other relevant purposes except propensity. *Id.* The inclusion of such evidence, other than to prove propensity, is subject to the Rule 403 balance between probative value and, inter alia, unfair prejudice. *Id.* (noting that the "broad reach of th[e] 'inclusionary' approach" permits admission of evidence for any relevant purpose except propensity so long as unfair prejudice does not substantially outweigh probative value). The court rejected each of Berkovich's arguments of relevance. *Id.* at 1022–23. Here, however, the relevant prior complaints had substantial probative value in that only one exonerated Bonanni and all were of sufficiently similar circumstances to merit admission to prove his modus operandi and the City's failure to discipline, train, and supervise him. *Cf. id.* (finding evidence lacking relevance, and therefore of minimal probative value, where the defendant was exonerated as to six of the seven prior complaints and there was no pattern to connect prior complaints to the current alleged acts). Thus, the admission of the prior complaints against Bonanni was not

inconsistent with the Second Circuit's approach in *Berkovich.*

The prior complaints were properly admitted as against Bonanni to prove identity, motive and intent, and modus operandi, and as against the City as evidence of whether it failed to discipline, train and supervise Bonanni.

■ However, even if it was error to admit the prior complaints, such error would not be sufficient to overturn the jury verdict. Limiting instructions were given to the jury at the time the complaints were introduced into evidence, as well as in the final charge subsequent to the conclusion of the proof and the parties' arguments. Therefore, if there was error it did not affect the substantial rights of the parties, and letting the verdict stand is not inconsistent with substantial justice. *See* Fed.R.Civ.P. 61.

### 2. *Perjury Charges*

Bonanni argues that the departmental records referencing perjury charges[1] brought against him in 1998 by a Special Prosecutor should not have been admitted into evidence, and further that since they were admitted he should not have been prevented from testifying as to the outcome of those charges. He contends that these errors were prejudicial because he relied in part on his own testimony to convince the jury that he did not physically participate in the arrest but rather was in a vehicle when Lewis was taken into custody.[2] He further argues that the probative value of the records was questionable.

---

**1.** The charges alleged that Bonanni and another officer committed perjury in testimony regarding the one complaint of excessive force against Bonanni that was substantiated.

**2.** He also relied upon the testimony of at least three of his fellow officers that he was not

present at the physical arrest of plaintiff. The perjury charges and prior complaints had nothing to do with their testimony. Apparently, the jury also disbelieved the fellow officers' testimony as it did Bonanni's.

The departmental records referencing perjury charges against Bonanni were received in evidence only against the City relating to the charges of failure to discipline, train, or supervise. There were no departmental records indicating a disposition of the perjury charges. Perjury charges against Bonanni with no disposition in departmental records were relevant to Lewis's claim that the City failed to discipline, train, or supervise Bonanni, the purpose for which they were admitted. The probative value of this relevant evidence was not outweighed by a danger of undue prejudice and therefore was properly admitted. Bonanni proffered his own testimony that he was exonerated of the charges, with no background as to proceedings that led to his exoneration. Moreover, aside from the fact that such testimony would be self-serving, the best evidence of a disposition of the charges is the record. Here, there was no documentation of any proceedings or disposition of the charges. Accordingly, it was proper to preclude Bonanni from testifying regarding a disposition of the charges.

## B. *Bifurcation*

Defendants argue that it was error to deny the City's motion to bifurcate the trial. The principle basis upon which defendants contend that the claims against Bonanni and the City should have been tried separately is that the evidence of prior complaints admitted for the purposes of proving the claims against the City misled the jury in its consideration of the claims against Bonanni.

The presumption is that all claims will be tried together, unless special and persuasive reasons constituting exceptional circumstances exist. *Jeanty v. County of Orange*, 379 F.Supp.2d 533, 549

(S.D.N.Y.2005). A bifurcated trial may be appropriate "in order to (1) avoid prejudice; (2) provide for convenience; or, (3) expedite the proceedings and be economical." *Ismail v. Cohen*, 706 F.Supp. 243, 251 (S.D.N.Y.1989). The burden is upon the moving party to establish that bifurcation is appropriate. *DeVito v. Barrant*, No. 03–CV–1927, 2005 WL 2033722, at *11 (E.D.N.Y.2005). The prior complaints were admissible as against Bonanni on the excessive force claim for the limited purpose of establishing identity, which he brought in issue, and on the equal protection claim to establish motive, intent, and modus operandi. They were also admissible against the City on the *Monell* claim. Limiting instructions were given at the time the evidence was introduced and at the conclusion of the trial, reducing the possibility of any prejudice to defendants. Moreover, trying all the claims together would promote convenience, expedite the proceedings, and preserve judicial resources. *See DeVito*, 2005 WL 2033722, at *11 (noting that bifurcation "could cause a waste of judicial resources if witnesses and evidence must be presented twice").

## C. *Jury Selection*

The City argues that disqualification of two [3] potential jurors for cause based upon their employment in the law enforcement field and the refusal to strike for cause a female juror suffering from generalized anxiety disorder were errors justifying a new trial.

The City contends that the two people working in law enforcement stated that they could fairly and impartially weigh the evidence without bias or prejudice. However, their demeanor and actions during jury selection demonstrated

---

**3.** The City's motion papers refer to three jurors excused because of their work in law enforcement. However, there were only two such jurors.

that they could not be fair and open-minded in this case, including some of their answers to questions involving their law enforcement experiences. There was no error in dismissing these jurors for cause upon plaintiff's motion to do so.

 As to the anxious juror, she stated that she understood that the trial process would not be confrontational to her and that she could work through her anxiety. She answered all of the questions during voir dire. Moreover, the defendants used a peremptory challenge. This juror was dismissed and did not serve on the jury. The City contends that requiring it to use one of three peremptory challenges shared by the two defendants for this juror limited the defendants' ability to empanel a fair and impartial jury. However, the City does not state how the use of this challenge limited the ability to empanel a fair and impartial jury. Additionally, counsel for both defendants indicated that the jury was satisfactory to them.

There was no error in the jury selection process.

## D. *Weight of Evidence*

### 1. *Excessive Force*

 Defendants point to testimony from Bonanni and three other officers to the effect that Bonanni was in a patrol vehicle down the block at the time of plaintiff's apprehension. They also point to the medical reports which allegedly showed minimal injuries suffered by plaintiff.

Lewis testified that, while he was on the pavement, in handcuffs, first one officer, and then Bonanni stepped on his head with his full weight and ground plaintiff's face into the pavement. Plaintiff's treating physician testified that he suffered abrasions and a contusion to his face and a closed head injury. Photographs admitted in evidence, although taken after he was

treated, showed the injuries to plaintiff's face. This evidence, if credited, was a sufficient basis upon which the jury could find that Bonanni used excessive force upon Lewis.

Defendants also point to evidence such as medical records of de minimis injuries, Lewis admitting he assaulted the complainant and damaged his girlfriend's property, among other things, to support their argument that the amount of force used was appropriate. This argument is inapposite because the threshold issue was whether Bonanni participated in plaintiff's physical arrest or not. According to Bonanni and the other officers, he did not. If this were believed, then the excessive force claim would be decided in favor of defendant, with no consideration of the amount of force used. Similarly, if Lewis's version were believed, the issue would be decided in plaintiff's favor because under no circumstances could it be said that stepping on the head of an under control, handcuffed suspect laying on the ground, and grinding his face into the pavement was a proper, reasonable use of force.

The jury's verdict demonstrated that it credited Lewis's version of events, rather than Bonanni's or the other officers. The verdict on the excessive force claim against Bonanni was not seriously erroneous or a miscarriage of justice, and a new trial is not warranted.

### 2. *Equal Protection*

 Bonanni contends the jury's finding against him on the equal protection claim was against the weight of the evidence because plaintiff merely introduced the prior complaints from his personnel file. Plaintiff did introduce into evidence the prior complaints against Bonanni. Every complaint was made by an African–American—100%. Bonanni testified that only 65% of the arrests he made were of

African–Americans. The complaints were also very similar factually, such as kicking or hitting a handcuffed African–American suspect in the head. Further, there appeared to be no motivation other than race for Bonanni to assault the handcuffed Lewis in this manner. The jury's verdict on the equal protection claim against Bonanni was also not seriously erroneous or a miscarriage of justice, and a new trial is not warranted.

### 3. *Failure to Discipline, Train, or Supervise*

■ The City argues that the only evidence presented to support plaintiff's claim for failure to discipline, train, or supervise was the seven prior complaints, only one of which substantiated misconduct by Bonanni. The City points to evidence that it contends shows that it did properly discipline, train, and supervise Bonanni: he was required to participate in yearly in-service training including use of force, constitutional rights, and racial sensitivity; and its handling of the one substantiated complaint (turned matter over to the District Attorney, suspended Bonanni, mandated in-service training when Bonanni returned to work after acquittal).

All of the in-service training the City provided to Bonanni was the same training it required of all officers. Documentary evidence established that in a single year Bonanni was responsible for 10% of excessive force complaints against the City, which employed over 330 police officers. Additionally, all of the excessive force complaints against Bonanni were filed by African–Americans, who alleged strikingly similar misconduct. Despite having this information, the City did not require Bonanni to undergo additional training, no additional supervision was provided, and no written or verbal warnings were given. Further, the City's purportedly adequate response to the substantiated complaint of excessive force (assaulting a handcuffed African–American suspect) could be viewed as supporting Lewis's claim that the City failed to discipline, train, and supervise Bonanni. The City initiated a disciplinary proceeding and suspended Bonanni from the police force when the complaint of an assault on a suspect was substantiated. A grand jury indicted Bonanni for assaulting the suspect. The City police department initiated departmental charges against Bonanni, which recommended termination. Bonanni was acquitted of the criminal charges related to that incident. The City then reinstated Bonanni with full back pay and benefits for the 2–1/2 years he was suspended. Upon his reinstatement, the City required only the same in-service training that would be required of any other officer, and there was no evidence that the City instituted any special supervision. The City has no record of the resolution of the departmental assault charges brought against Bonanni.

In addition to the charges related to the assault, a special prosecutor brought charges against Bonanni and another officer alleging that they had committed perjury in testimony given regarding the assault alleged in the substantiated complaint. Departmental charges of perjury were also brought, again with a recommendation of dismissal. The City did not require any special training or supervision based upon the allegations of perjury. Again, the City failed to produce any record of the resolution of the criminal or departmental perjury charges.

The jury verdict finding that the City had a custom, policy, and practice that failed to properly train, supervise, and/or discipline Bonanni was not seriously erroneous. A new trial is not necessary to prevent a miscarriage of justice.

### E. *Oral Addition to Verdict Form*

The City argues that an oral addition to the verdict form during the explanation of Question One was a fundamental error of law requiring a new trial. This argument is based in large part on the assertion that it was error to admit the prior complaints of excessive force against African–American suspects against Bonanni. As discussed in detail above, the prior complaints were properly admitted for the limited purposes as the jury was instructed. Thus, to the extent that the City's motion in this regard is based upon error in admitting prior complaints it must be denied.

Additionally, the City misapprehends the explanation with regard to Question One. The explanation clearly set forth the limited purpose for which the jury could consider the prior complaints with regard to this question—the *identity* of Bonanni as the officer who stepped on plaintiff's head, while he was handcuffed on the pavement, and ground plaintiff's face into the pavement. The explanation did not suggest that the jury use the prior complaints in its consideration of whether the *amount* of force used was excessive; in fact, the jury was instructed that if it found that the events occurred as plaintiff testified, then the amount of force used was excessive as a matter of law.

■ The City further argues that even if the jury believed that Bonanni participated in the physical arrest of Lewis, it could have found that given the circumstances of the apprehension and plaintiff's resulting injuries, the amount of force used was not excessive. To the contrary, there are no circumstances that would justify the force used in Lewis's version of events, that Bonanni stepped on Lewis's head with his full weight and ground his face into the pavement, while Lewis was under control and handcuffed on the ground. Further, Bonanni did not testify that he used some

other amount or type of force—he testified that he was in a vehicle at the time of the incident, and the explanation to the jury included this fact. The City cannot now rely upon a hypothetical version of events about which there was no evidence at trial as grounds for a new trial.

■ The City also objects to the amendment of page 22 of the jury charge to eliminate "for the sole purpose" from the instruction about the jury's limited consideration of prior civilian complaints with regard to claims against the City. It was clear from the limiting instructions given during the course of the trial that the prior complaints could be considered with regard to Bonanni's identity and motive as to the claims against him. Removing the "for the sole purpose" language from the written charge given to the jury merely reflected the limits of their use of the prior complaints as a whole.

### F. *Qualified Immunity*

Defendants argue that it was error as a matter of law to deny the request to charge the jury on qualified immunity. They contend that the jury should have been permitted to determine if Bonanni's actions were reasonable in light of the circumstances.

■ Qualified Immunity insulates a governmental official performing discretionary functions from liability so long as his " 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir.1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity also protects public officials from liability when it was objectively reasonable for them to believe that their actions did not violate a plaintiff's constitutional rights.

*Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000). Legal questions pertaining to qualified immunity, such as whether violation of a federally protected right has been asserted, whether the asserted right was clearly established, and whether the facts "demonstrate the objective reasonableness of the public official's conduct," are for the court and not the jury. *Id.* at 632.

■ The issue is not whether plaintiff had a clearly established constitutional right to be free from the use of excessive force during arrest. Rather, the issue is whether it could have been objectively reasonable for Bonanni to believe that his actions did not violate Lewis's constitutional rights. The two versions of events about which there was evidence in this case were (1) Bonanni, as he testified, was in a vehicle and did not participate in the physical arrest of plaintiff; and (2) Bonanni, as Lewis testified, stepped on a handcuffed, prone Lewis's head and ground his face into the pavement. In Bonanni's version, qualified immunity is not an issue because he was not even involved in the physical arrest. Thus, the issue only need be considered if Lewis's version was credited. Put simply, no police officer could reasonably believe that stepping on the head of an already-handcuffed, prone suspect and grinding his face into the pavement would not violate the suspect's right to be free from excessive force, regardless of the other surrounding circumstances. As a matter of law Bonanni was not entitled to qualified immunity and there was no error in denying a request to charge the jury on that defense.

### G. *Amount of Damages*

Defendants argue that both the compensatory and punitive damages awards are excessive. They contend that a new trial must be ordered unless plaintiff agrees to a remittitur.

### 1. *Compensatory*

■ Lewis testified that he was in significant physical pain during the time that Bonanni stood on his head and ground his face into the pavement. He yelled, to no avail, for Bonanni to stop. He felt extremely traumatized, degraded, and humiliated by the assault, which occurred on a public street in front of many neighborhood people. During the assault by Bonanni, pebbles and asphalt from the road were ground into the skin on plaintiff's face. The skin was abraded, plaintiff's face swelled, and a contusion formed. Medical records and testimony from the treating physician documented these injuries. The treating emergency room physician also diagnosed a closed head injury and gave plaintiff instructions regarding the closed head injury. Additionally, photographs of plaintiff's face, taken after he was treated at the hospital show the injuries. Plaintiff also testified that the pain and swelling from the physical injury lasted for several weeks. He suffered from headaches, difficulty sleeping, and nightmares for months. He described in some detail his nightmares which involved Bonanni standing on his head and smirking at him.

The jury awarded Lewis $65,000 in actual damages to compensate him for the physical and emotional injuries he suffered as a result of the assault by Bonanni. The City argues that the plaintiff's alleged injuries lacked any credible basis and therefore should be reduced to $1.00 nominal damages. It contends that his headaches, right eye blindness, and closed head trauma were caused by his history of glaucoma and fist-fights, not the assault by Bonanni. Credibility of the testimony is the province of the jury. Here there was sufficient

evidence for the jury to determine that Lewis suffered injuries requiring compensation of more than nominal damages. Additionally, it is purely speculative, and not supported by any evidence, that plaintiff's headaches and closed head trauma were caused by some preexisting conditions. The right eye blindness admittedly was caused by glaucoma, and plaintiff did not seek, nor did the jury award, damages for blindness.

Bonanni argues that any mental anguish caused by the fact of plaintiff's arrest alone cannot be compensated. He also argues that Lewis's nightmares may have been caused by previous incidents with the police and therefore would not be compensable. There is no evidentiary basis for either of these arguments. Therefore, they are summarily rejected.

■ Next Bonanni argues that Lewis's proof of causation failed in that he did not have an expert testify that the injuries plaintiff attributed to the assault by Bonanni actually were caused by Bonanni, and not Officer Shanahan, who according to plaintiff's testimony stood on his head for a number of seconds before Bonanni did. This argument is unavailing. First, Bonanni never requested that the jury be instructed to allocate the physical injury component of actual damages between him and Officer Shanahan. Second, plaintiff testified that he was in significant pain while Bonanni was standing on his head grinding his face into the pavement. Further, he specifically related nightmares occurring months after the assault in which

he dreamed that Bonanni was again standing on his head, then smirking.

■ Bonanni also argues that there was a risk of significant duplication for different torts against different defendants. The jury found that Bonanni violated Lewis's constitutional rights by using excessive force because of race, causing plaintiff actual injuries. The jury further found that the City had a custom, policy, and practice that failed to properly train, supervise, and/or discipline Bonanni, which was a proximate cause the violations of plaintiff's constitutional rights. There were no duplicative torts and no risk of damages inflation—the City's failure was a proximate cause of Bonanni's infliction of injuries upon plaintiff. Therefore, the City and Bonanni are both responsible for the injuries suffered by plaintiff.

■ Bonanni contends that the compensatory damages award was too high when compared to damages awarded in similar cases. He cites several cases in support of his position.[4] *See Wheatley,* 679 F.2d at 1039–40 (remanding for remittitur to $25,000 from jury award of $55,000 where plaintiff's injury evidence was sketchy and his discomfort was short-lived); *Hynes v. LaBoy,* 887 F.Supp. 618, 626 (S.D.N.Y.1995) (finding no inadequacy in jury award of $1,500 for injuries of two cuts that required stitches and a black eye, which amounted to $250 per day for pain and suffering from the time of the injury to medical discharge from prison infirmary, after noting that due deference must be given to the jury's fact-finding); *Jones*

---

4. Bonanni also cites *Fiacco v. City of Rensselaer,* 783 F.2d 319, 322, 324, 332–33 (2d Cir. 1986) in support of a remittitur. He describes the plaintiff's injuries, but misstates that the *Fiacco* court declined to review the district court's remittitur order inferring that the remittitur order was proper. Actually, the *Fiacco* court found that because Fiacco ac-

cepted the remittitur order thereby consenting to the reduced award she could not challenge the remittitur order on appeal. The District Court had ordered a remittitur to $25,000 where plaintiff suffered scratches and bruises, required surgery to repair a tendon in her finger, and required an arm brace. *Id.*

*v. Huff,* 789 F.Supp. 526, 536–37 (N.D.N.Y. 1992) (noting that the corrections officer who inflicted most of plaintiff's injuries was not a defendant, court awarded a total of $9,500 (apportioned among three defendants) for Eighth Amendment violations including slaps, punches, forcible stripping, and failure to intervene as plaintiff was beaten by other officers). Inflation adjustment must be made so that a meaningful comparison can be accomplished. Using the United States Bureau of Labor Statistics calculator, *see Martinez,* 2005 WL 2143333, at *20 & n. 9, yields the following: *Wheatley,* $54,843.75; *Hynes,* $2,083.59; *Jones,* $14,334.17, *Fiacco,* $48,287.64.

Plaintiff sets forth the following cases for comparison. In *Mendoza v. City of Rome,* 872 F.Supp. 1110, 1126 (N.D.N.Y. 1994), a jury awarded compensatory damages of $200,000, on claims of false arrest, excessive use of force, and assault. There plaintiff suffered bruises and swelling of his knee, bruises to his forehead, headaches, and numbness to his wrists and hands. *Id.* at 1120. The injuries were not permanent. *Id.* Plaintiff also suffered shame, humiliation, and embarrassment. *Id.* at 1120–21. A remittitur to $62,500 ($89,276.74 when adjusted for inflation) was ordered.

An award of $190,000 was reduced to $100,000 where plaintiff sustained a laceration requiring several stitches and pain in his head in an assault. *Nash v. Sue Har Equities, LLC,* 45 A.D.3d 545, 546, 846 N.Y.S.2d 215 (N.Y.App. Div.2d Dep't 2007). The plaintiff's injuries were not permanent. *Id.* Notably, the *Nash* Court was applying the more stringent material deviation from reasonable compensation standard applicable in New York State courts. *See Patterson,* 440 F.3d at 119.

In *Morales v. City of New York,* No. 99 Civ. 10004, 2001 WL 8594, at *7 (S.D.N.Y. Jan. 2, 2001), plaintiff suffered dark bruises and traumatization during her lawful arrest. Although her injuries were not permanent, she required counseling for several months. The jury's award of $2.75 million shocked the conscience of the court, which ordered a remittitur to $50,000 ($59,766.52 adjusted for inflation), *Id.* at *10.

In *Bender v. City of New York,* 78 F.3d 787, 792 (2d Cir.1996) the plaintiff suffered "a physical blow to the mouth that resulted in no bruise or cut, much less any permanent injury; 24 hours' confinement in a cell under extremely unpleasant conditions; an additional five hours of custody prior to release at arraignment; the pendency of disorderly conduct and assault charges for six months, prior to their dismissal; and emotional distress to the plaintiff that was manifested by nightmares and occasional loss of sleep over a period lasting a year and a half" as a result of various police misconduct. The jury awarded an aggregate of $300,700 against multiple defendants, which the Second Circuit found to be excessive, *Id.* However, only the intentional infliction of emotional distress component of $150,000 was challenged on appeal. *Id.* at 795. The court ordered a new trial unless the plaintiff agreed to remit $150,000. *Id.* After the remittitur, the damages award was $150,700 ($203,327.82 adjusted for inflation).

In *Becker v. City of New York,* 192 Misc.2d 194, 200–01, 745 N.Y.S.2d 857 (N.Y.City Civ.Ct.2002), plaintiff suffered multiple lacerations requiring sutures to his face and head, multiple facial contusions, and swelling of one eye and both cheeks after being assaulted by a police officer. He also suffered humiliation and fright. *Id.* at 201, 745 N.Y.S.2d 857. He was in the hospital for three days, and currently has a scar on his nose. *Id.* The court found that the jury award of

$250,000 for past pain and suffering was "beyond what is reasonable compensation for" plaintiff's injuries. *Id.* The award was reduced to $150,000 ($176,508.89 adjusted for inflation). *Id.*

Finally, plaintiff cites *Bert v. Port Authority of N.Y. & N.J.,* 166 A.D.2d 351, 561 N.Y.S.2d 416 (N.Y.App. Div. 1st Dep't 1990). In *Bert* three police officers assaulted and arrested plaintiff, in an incident with racial overtones. *Id.* at 351, 561 N.Y.S.2d 416. Although he was detained only for a few hours and suffered no substantial mental or physical injury, he was subjected to "abject humiliation ... in the presence of young and impressionable members of his family." *Id.* at 352, 561 N.Y.S.2d 416. Accordingly, the appellate court upheld the remittitur to $100,000 ($161,968.63 adjusted for inflation) which plaintiff had accepted. *Id.* at 351–52, 561 N.Y.S.2d 416.

Upon close consideration of the evidence presented at trial, the racial motivation of Bonanni's excessive use of force, and the cases cited by the parties while giving due deference to the finding of the jury, the compensatory damages award of $65,000 in this case does not shock the judicial conscience. Accordingly, no remittitur is appropriate.

### 2. *Punitive*

■■■■ The City seeks to have the jury's punitive damages reduced to the nominal amount of $1.00. The City argues that any additional amount will have no deterrent effect upon Bonanni since the City will indemnify him for the award and negative publicity regarding the case provided sufficient deterrence. The City has produced no authority for the proposition that a punitive damages award should be reduced to a nominal amount on the basis of an indemnification agreement. That proposition is rejected. The City relies

upon *Schwenk v. Kavanaugh,* 4 F.Supp.2d 116 (N.D.N.Y.1998), where punitive damages of $1.00 were awarded because negative publicity provided sufficient deterrence. In *Schwenk,* the defendant was an elected public figure (district attorney), and news about the trial was widely disseminated in legal publications. That situation is not at all analogous to the situation here—a police officer used excessive force upon a handcuffed African–American lying on the street, because of the man's race.

■■■■ Bonanni argues that the punitive award is higher than necessary to achieve the purpose of deterrence due to jury passion or bias, especially where the individuals at whom the deterrence is directed are law enforcement officials responsible for the socially beneficial activities of preventing and stopping criminal behavior. The passion and bias Bonanni suggests played a role in the jury award resulted from the testimony and documents admitted at trial. It has been decided that there was no error in admitting the prior complaints and perjury charges. Moreover, it is particularly important to further the goal of deterring defendants such as Bonanni from participating in violations of constitutional rights given their positions of public trust, as defendant points out, with the socially beneficial goal of preventing criminal activity. Thus, this is not an adequate basis for eliminating the punitive damages award.

■■■■ Bonanni also argues that the ratio of punitive damages to compensatory damages—because there was a substantial award of compensatory damages the punitive award should be no more than an equal amount. Because Bonanni's use of excessive force against Lewis was racially motivated and occurred while plaintiff was handcuffed, it is particularly reprehensible. Further, the punitive damages award is three times the amount of compensatory

damages, an acceptable ratio. *See Patterson*, 440 F.3d at 121 (noting that a punitive damages award of " 'more than 4 times the amount of compensatory damages' " has been upheld by the United States Supreme Court (quoting *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24, 111 S.Ct. 1032, 1046, 113 L.Ed.2d 1 (1991))). Finally, a comparison of the difference between this award and those from comparable cases leads to the conclusion that this jury's $200,000 award of punitive damages is not so grossly excessive as to shock the judicial conscience. *See, e.g., Ismail v. Cohen*, 899 F.2d 183, (2d Cir.1990) (upholding $150,000 punitive damage award [$242,-952.95 adjusted for inflation]); *O'Neill v. Krzeminski*, 839 F.2d 9, 13–14 (2d Cir. 1988) (finding, in an excessive force case where handcuffed suspect was repeatedly struck on the head by law enforcement officers, punitive damage award totaling $185,000 [$331,049.92 adjusted for inflation] against the two defendants not excessive).

## IV. *CONCLUSION*

There was no error in the rulings pertaining to the admission of prior complaints and perjury charges, bifurcation, or jury selection. The jury's verdict was not against the weight of the evidence as to the excessive force, equal protection, or municipal liability claims. The purported oral addition to the verdict merely reiterated the instruction previously given to the jury. Bonanni was not entitled to qualified immunity as a matter of law if the jury credited Lewis's version of events, so there was no error in denying the request to include a qualified immunity charge. The jury awards of $65,000 in compensatory damages and $200,000 in punitive damages do not shock the judicial conscience.

Accordingly, it is

ORDERED that

1. Defendant William Bonanni's post-trial motions are DENIED;

2. Defendant the City of Albany Police Department's post-trial motions are DENIED;

3. Plaintiff may file and serve an application for attorneys fees and costs pursuant to 42 U.S.C. § 1988 on or before May 1, 2008; and

4. Defendants may file and serve an answer on or before May 8, 2008.

The application will be taken on submit without oral argument, and a final judgment will be entered thereafter.

IT IS SO ORDERED.